NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**CLARILOGIC, INC.,**
*Plaintiff-Appellee*

**v.**

**FORMFREE HOLDINGS CORPORATION,**
*Defendant-Appellant*

_____

2016-1781

_____

Appeal from the United States District Court for the Southern District of California in No. 3:15-cv-00041-DMS-NLS, Judge Dana M. Sabraw.

_____

Decided: March 15, 2017

_____

ARTHUR ALBERT WELLMAN, JR., San Diego, CA, argued for plaintiff-appellee.

NIGAMNARAYAN ACHARYA, Baker Donelson Bearman Caldwell & Berkowitz, P.C., Atlanta, GA, argued for defendant-appellant. Also represented by KRISTIN S. TUCKER.

_____

Before LOURIE, REYNA, and CHEN, *Circuit Judges.*

REYNA, *Circuit Judge.*

FormFree Holdings Corporation ("FormFree") appeals from the United States District Court for the Southern District of California's grant of Clarilogic, Inc.'s ("Clarilogic") summary judgment motion holding that the claims of U.S. Patent No. 8,762,243 ("the '243 patent") are ineligible under 35 U.S.C. § 101. Because the '243 patent's claims are directed to an abstract idea and the claims contain no additional elements that transform the nature of the claims into a patent-eligible application of the abstract idea, we *affirm*.

## BACKGROUND

The '243 patent is entitled "Systems and Methods for Electronic Account Certification and Enhanced Credit Reporting." According to the '243 patent, it generally relates to a method for electronically certifying a potential borrower's financial account data and providing a credit report. Figure 1A shows the steps the system undertakes:



Fig. 1A

J.A. 109.

The '243 patent has 18 claims, of which claims 1 and 16 are independent.

Claim 1 is representative:

1. A computer-implemented method for providing certified financial data indicating financial risk about an individual, comprising:

(a) receiving a request for the certified financial data;

(b) electronically collecting financial account data about the individual from at least one financial source,

(c)  transforming the financial account data into a desired format;

(d)  validating the financial account data by applying an algorithm engine to the financial account data to identify exceptions, wherein the exceptions indicate incorrect data or financial risk;

(e)  confirming the exceptions by collecting additional data and applying the algorithm engine to the additional data,

(f)  marking the exceptions as valid exceptions when output of the algorithm engine validates the exceptions; and

(g)  generating, using a computer, a report from the financial account data and the valid exceptions,

wherein the financial account data comprises at least one of real-time transaction data, real time balance data, historical transaction data, or historical balance data; and the algorithm engine identifies a pattern of financial risk; the method is computer implemented, and steps (c), (e), and (f) are executed via the computer or a series of computers.

J.A. 145 at col. 26 ll. 19–43.

In brief, the claimed computer-implemented system seeks a potential borrower's financial information from a third party, applies an "algorithm engine" to the data, and outputs a report. The algorithm engine itself is not claimed, nor are the claims limited by any rules that are used to complete the various method steps attributed to the "algorithm engine." Rather, the "system may receive logic rules from government entities or particular users which may establish logic rules used to identify infor-

mation." J.A. 140 at col. 16 ll. 32–35. Thus, the "algorithm engine" is obtained from third parties.

The district court found that the '243 patent was directed to patent-ineligible subject matter. It reasoned that "[a]t best, the claims describe using generic, multipurpose computer functions to automate the fundamental economic process of financial risk assessment. . . . However, any proprietary risk analysis is contained in an unpatentable, undescribed algorithm or set of algorithms." *Clarilogic, Inc. v. Formfree Holdings Corp.*, No. 15-cv-41-DMS(NLS), 2016 WL 3247890, at *3 (S.D. Cal. Mar. 4, 2016).

FormFree appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## STANDARD OF REVIEW

We review a district court's grant of summary judgment according to the law of the regional circuit, here the Ninth Circuit. *See Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1146 (Fed. Cir. 2016) (citations omitted). In the Ninth Circuit, summary judgment is reviewed *de novo*. *Humane Soc'y of the U.S. v. Lock*, 626 F.3d 1040, 1047 (9th Cir. 2010). We also review *de novo* whether a claim is invalid under the judicially created exceptions to § 101. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1311 (Fed. Cir. 2016) (citations omitted).

## DISCUSSION

Section 101 defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof," subject to the other limitations of the Patent Act. 35 U.S.C. § 101. Apart from the Patent Act, the Supreme Court has created exceptions to the literal scope of § 101. "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. v. CLS*

*Bank Int'l.*, 134 S. Ct. 2247, 2354 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)).

In *Alice*, the Court supplied a two-step framework for analyzing whether claims are patent eligible. First, we determine whether the claims at issue are "directed to" a judicial exception, such as an abstract idea. 134 S. Ct. at 2355. If not, the inquiry ends. *Thales Visionix Inc. v. United States*, ___ F.3d ___, 2017 WL 914618, at *5, (Fed. Cir. Mar. 8, 2017); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). If the claims are determined to be directed to an abstract idea we next consider whether the claims contain an "inventive concept" sufficient to "transform the nature of the claim into a patent-eligible application." *Alice*, 134 S. Ct. at 2355.

### 1. *Alice* Step One

Under *Alice* step one, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). We look to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery. *McRO*, 837 F.3d at 1314.

Claim 1 recites a method for "providing certified financial data indicating financial risk about an individual," comprising the steps of receiving a request, electronically collecting financial data, transforming the data into a desired format, validating the data by "applying an algorithm engine," analyzing certain exceptions, and generating a report. J.A. 145 at col. 26 ll. 19–43.

We find that claim 1 of the '243 patent is directed to the abstract idea of gathering financial information of potential borrowers. When "the focus of the asserted

claims" is "on collecting information, analyzing it, and displaying certain results of the collection and analysis," the claims are directed to an abstract idea. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1343 (Fed. Cir. 2016). Peculiar to this case is that the algorithm engine mentioned in the claim is not claimed, identified, or explained. To be sure, claiming an algorithm does not alone render subject matter patent eligible. *See Gottschalk v. Benson*, 409 U.S. 63, 71–72 (1972). But a method for collection, analysis, and generation of information reports, where the claims are not limited to how the collected information is analyzed or reformed, is the height of abstraction.

### 2. *Alice* Step Two

Our next inquiry is whether the patent can be salvaged under step two. In step two, we consider the elements of the claim, both individually and as an ordered combination, to assess whether the additional elements transform the nature of the claim into a patent-eligible application of the abstract idea. *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014). This is the search for an inventive concept, which is something sufficient to ensure that the claim amounts to significantly more than the abstract idea itself. *Id.* For example, merely reciting the use of a generic computer or adding the words "apply it with a computer" cannot convert a patent-ineligible abstract idea into a patent-eligible invention. *Alice*, 134 S. Ct. at 2358; *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1332 (Fed. Cir. 2015).

FormFree invokes *Diamond v. Diehr*, 450 U.S. 175 (1981) to argue that its invention is "transformative," and thus eligible for patent protection. In *Diehr*, the Supreme Court confirmed the patentability of claims directed to a new process for curing synthetic rubber by employing a well-known mathematical equation. 450 U.S. at 187. At

the end of the *Diehr* process, there was something tangibly different from what was input, i.e., cured rubber. *See id.* FormFree argues that its invention is "transformative" because it takes in financial data and outputs a report. We disagree. In contrast to *Diehr*, claim 1 recites a method that changes the way electronic information is displayed via an unknown and unclaimed process. Absent any limitation to how the data are changed, there is little, if any, transformative effect. Data are still data.

In *Electric Power Group*, we held that claims directed to real-time gathering and analysis of data from different points in an electric power grid were not sufficient under *Alice* step one or step two. 830 F.3d at 1353–56. Here, as in *Electric Power Group*, the claims require only off-the-shelf, conventional computer technology for gathering, analyzing, and displaying the desired information. 830 F.3d at 1355. Even if the '243 patent may be said to invoke internet-based systems to increase speed, as FormFree argues, this does not make the claimed invention patent eligible. *Id*. at 1355–56. The '243 patent does not claim the technical manner in which financial data is gathered, analyzed, or output. It does not claim any proprietary risk-assessment algorithm. The claims of the '243 patent therefore do not clear *Alice* step two.

## CONCLUSION

For the foregoing reasons, we *affirm* the district court's judgment that the claims of the '243 patent are ineligible under § 101.

## AFFIRMED