HUGHES, Circuit Judge,
dissenting.
Step one of Alice Corp. v. CLS Bank International, — U.S. -, 134 S.Ct. 2347, 189 L.Ed.2d 296 (2014) directs us to examine and determine the character of each claim as a whole. In distilling the purpose of a claim, we must not express the claim’s fundamental concept at an inappropriate level of abstraction but at a level consistent with the level of generality or abstraction expressed in the claims themselves. Following those principles, I would find the ’740 claims are directed to the abstract idea of categorical data storage. At step two of Alice, I would find the claims fail to recite any inventive concepts sufficient to transform themselves into a patent-eligible application. Thus, I believe the ’740 claims are ineligible under § 101, and I respectfully dissent from the majority’s contrary conclusion.
I
The majority does not dispute that the ’740 claims encompass “categorical data storage.” Maj. Op. 1262. We appear to disagree, however, on whether this characterization of the ’740 claims is at an unduly “high level of abstraction.” Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1337 (Fed. Cir. 2016). I am mindful that we must be careful not to overgeneralize a claim because, “if carried to its extreme, [it would make] all inventions unpatentable.” In re TLI Commc’ns LLC Patent Litig., 823 F.3d 607, 611 (Fed. Cir. 2016) (quoting *1263 Diamond v. Diehr, 450 U.S. 175, 189 n.12, 101 S.Ct. 1048, 67 L.Ed.2d 155 (1981)); see also Thales Visionix Inc. v. United States, 850 F.3d 1343, 1347 (Fed. Cir. 2017) (“We must therefore ensure at step one that we articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful.”). At the same time, we must not express the basic concept of the . claim in a way that is “untethered from the language of the claims.” Enfish, 822 F.3d at 1337. "When we assess what the claims are directed to, we must do so at the same level of generality or abstraction expressed in the claims themselves. Id.
I do not believe that we can describe the fundamental concept behind the ’740 claims at a lower level of abstraction than categorical data storage. For example, in Enfish, we found the claims were “directed to a specific improvement to the way computers operate.” Id. at 1336. We were only able to describe the claims at that level of specificity because the claims were not “directed to any form of storing tabular data, but instead [we]re specifically directed to a self-referential table.” Id. at 1337. We knew the “claims [were] directed to a specific implementation of a solution to a problem,” id. at 1339, because the specification contained a four-step algorithm for implementing the claimed self-referential table, id. at 1336-37.
Here, the ’740 claims are not directed to a specific means or method of implementing a “programmable operational characteristic.” Claim 1, for instance, claims a system comprising a main memory and a cache connected to a bus, with a “programmable operational characteristic” that “determines a type of data stored by said cache.” ’740 patent col. 6 11. 28-38. The claim does not provide any specific limitations on the “programmable operational characteristic,” making it a purely functional component. The “programmable operational characteristic” is nothing more than a black box for performing the abstract idea of storing data based on its characteristic, and the patent lacks any details about how that is achieved. The remaining computer elements in the claims (cache, memory, bus) are nothing more than a collection of conventional computing components found in any computer. See id. at col. 111. 51-col. 211. 56.
I disagree, therefore, with the majority that combining the black box of a “programmable operational characteristic” with conventional computer equipment constitutes a specific improvement in computer memory systems. Because the ’740 patent does not describe how to implement the “programmable operational characteristic” and requires someone else to supply the innovative programming effort, it is not properly described as directed to an improvement in computer systems. See Amdocs (Isr.) Ltd. v. Openet Telecom, Inc., 841 F.3d 1288 (Fed. Cir. 2016) (Reyna, J., dissenting) (“[L]ong-standing Supreme Court precedent clearly establishes that a desired goal without means for achieving that goal is an abstract idea.”); see also Dealertrack, Inc. v. Huber, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (finding claims abstract because the patent did “not specify how the computer hardware and database are specially programmed to perform the steps claimed in the patent”).
The question of what the claims cover is critical to the § 101 analysis. The results from this analysis may also reveal a § 112 enablement problem, but that does not preclude its relevance to the § 101 analysis. Here, the lack of specificity supports the notion that the claims are directed to an abstract idea. It is true that the ’740 patent includes a microfiche appendix containing computer code. But Visual Memory does not contend that the microfiche limits *1264 the claims. J.A. 503 (conceding that “[i]n these claims, the microfiche is not claimed in the claims”). Therefore, considering the microfiche code would result in an inquiry that is “untethered from the language of the claim[s].” Enfish, 822 F.3d at 1337. Thus, I would find that the ’740 claims are directed to the abstract idea of categorical data storage.
At step two of Alice, if the claims are directed to patent-ineligible subject matter, we must “consider the elements of each claim both individually and ‘as an ordered combination’ to determine whether the additional elements ‘transform the nature of the claim’ into a patent-eligible application.” Alice, 134 S.Ct. at 2355 (quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc., 566 U.S. 66, 78, 132 S.Ct. 1289, 182 L.Ed.2d 321 (2012)). The ’740 claims do not contain an inventive concept. The claims refer to generic computer components and use them to perform generic computer functions. See ’740 patent col. 1 11. 51-col. 2 11. 56. These are all routine components and functions used to “apply” the abstract idea of categorical data storage in a computer environment and are not sufficient to constitute an inventive concept and transform the abstract idea into a patent-eligible invention.
II
In sum, I believe the majority has analyzed step one of Alice in a way that is untethered from the ’740 claims and the specification. Under the majority’s reasoning, many patent ineligible computer-implemented inventions could be described as non-abstract because they purport to “improve” a computer despite requiring someone else to provide all the innovation. I would find the ’740 claims are directed to the abstract idea of categorical data storage, and that the claims fail to recite any inventive concepts sufficient to transform the abstract idea into a patent eligible invention under § 101. Accordingly, I respectfully dissent.