NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**ADAPTIVE STREAMING INC., A DELAWARE CORPORATION,**
*Plaintiff-Appellant*

**v.**

**NETFLIX, INC., A DELAWARE CORPORATION,**
*Defendant-Appellee*

_____

2020-1310

_____

Appeal from the United States District Court for the Central District of California in No. 8:19-cv-01450-DOC-KES, Judge David O. Carter.

_____

Decided: December 14, 2020

_____

PAUL SKIERMONT, Skiermont Derby LLP, Dallas, TX, for plaintiff-appellant. Also represented by ALEXANDER EDWARD GASSER; MIEKE K. MALMBERG, Los Angeles, CA.

MICHAEL SOONUK KWUN, Kwun Bhansali Lazarus LLP, San Francisco, CA, for defendant-appellee.

_____

Before PROST, *Chief Judge*, CLEVENGER and TARANTO,
*Circuit Judges*.

TARANTO, *Circuit Judge*.

Adaptive Streaming, Inc., owns U.S. Patent No. 7,047,305, which claims systems that can receive a video signal in one format and broadcast it to at least one device calling for a different format. Adaptive sued Netflix, Inc., in the United States District Court for the Central District of California, alleging that Netflix infringed the '305 patent. The district court held that the asserted claims of the '305 patent are invalid under 35 U.S.C. § 101. *Adaptive Streaming Inc. v. Netflix, Inc.*, No. SA CV 19-1450-DOC (KESx), 2019 WL 7841923 (C.D. Cal. Nov. 19, 2019) (*Merits Opinion*). We affirm.

I

A

The '305 patent is titled "Personal Broadcasting System for Audio and Video Data Using a Wide Area Network" and "relates generally to digital video processing techniques." '305 patent, col. 1, lines 21–22. As background, the '305 patent states that communication devices like radio, cellphones, and televisions replaced "primitive techniques" of communicating, yet communication between devices of different types is hindered by the fact that devices use different formats. *Id.*, col. 2, lines 7–34. The '305 patent states that it "provides a technique including a system for capturing audio and video information from a first source and displaying such video and audio information at a second source, where the format of the first source and the format of the second source are different from each other." *Id.*, col. 1, lines 22–27

It is undisputed that claims 39, 40, and 42 are at least representative of all, and may be the only, claims at issue in the case. Limited to a video signal, they recite:

39. A system to broadcast to at least one client device, the system comprising:

a processor; and

a broadcasting server coupled to the processor, the broadcasting server including:

an image retrieval portion to retrieve at least one incoming video signal having a first format;

a data structure usable to determine parameters for second compression formats for the at least one incoming video signal; and

at least one transcoding module coupled to the image retrieval portion and which has access to the data structure, the transcoding module being capable to transcode the at least one incoming video signal from the first format into multiple compressed output video signals having respective second compression formats based at least in part on the parameters;

wherein at least one of the second compression formats is more suitable for the at least one client device than the first format; and

wherein the multiple compressed output video signals having the at least one second compression format more suitable for the at least one client device can be provided by the broadcasting server, wherein any one of the multiple compressed output video signals can be selected to be presented at the at least one client device.

40. The system of claim 39 wherein the at least one client device can select which of the compressed

output video signals to present and may access the selected compressed video signals from multiple devices, including access of compressed output video signals having different second compression formats from different devices.

42.  The system of claim 39 wherein a different compressed output video signal can be dynamically selected to be presented at the at least one client device, instead of a current compressed output video signal, in response to a change in a bandwidth condition.

'305 patent, col. 27, lines 8–39, 44–48.

B

In July 2019, Adaptive sued Netflix for infringement of the '305 patent.  Netflix moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that the '305 patent claims subject matter not eligible for patenting under 35 U.S.C. § 101.  The district court agreed with Netflix and dismissed Adaptive's complaint, without leave to amend.  *Merits Opinion*, 2019 WL 7841923, at \*6.

Adaptive timely appealed.  We have jurisdiction under 28 U.S.C. § 1295(a)(1).

II

On appeal, Adaptive argues that the asserted claims of the '305 patent are not directed to an abstract idea and that, in any event, they include inventive concepts making them patent eligible.  We disagree.

Following Ninth Circuit law in this case, we review the Rule 12(b)(6) dismissal de novo. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030 (9th Cir. 2008). Like the district court, we must accept all factual allegations in the complaint, understood in the light most favorable to the plaintiff.  *Id.* at 1031.  Subject-matter eligibility under § 101 is a question of law based on underlying facts.

*See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1124–25 (Fed. Cir. 2018). "Like other legal questions based on underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) . . . motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).

Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. But § 101 "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (internal quotation marks omitted). "A claim falls outside § 101 where (1) it is directed to a patent-ineligible concept, *i.e.*, a law of nature, natural phenomenon, or abstract idea, and (2), if so, the particular elements of the claim, considered both individually and as an ordered combination, do not add enough to transform the nature of the claim into a patent-eligible application." *SAP*, 898 F.3d at 1166–67 (internal quotation marks omitted).

A

Under the first step of the *Alice* framework, the district court concluded that the claims of the '305 patent are directed to the abstract idea of "collecting information and transcoding it into multiple formats." *Merits Opinion*, 2019 WL 7841923, at *3. That conclusion assumes for purposes of eligibility analysis that, despite the "at least one client device" language, which might suggest coverage of a system limited to sending to a single device, the claims require, as suggested by at least the term "broadcast," the ability to send to multiple devices. We agree with the

district court's characterization of what the claims are directed to.

We consider "what the patent asserts to be the 'focus of the claimed advance over the prior art.'" *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019) (quoting *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016)). In this case, the claims and written description make clear that the focus of the claimed advance is the abstract idea of format conversion, from an incoming signal's format to a variety of formats suited to different destination devices. The focus is not any specific advance in coding or other techniques for implementing that idea; no such specific technique is required.

The written description, through material incorporated by reference, itself explains the familiarity of translation of content—from a format (including a language) of a sender to one suited to a recipient—as a fundamental communication practice in both the electronic and pre-electronic worlds. J.A. 337–38. We have held that the ideas of encoding and decoding image data and of converting formats, including when data is received from one medium and sent along through another, are by themselves abstract ideas, and accordingly concluded that claims focused on those general ideas governing basic communication practices, not on any more specific purported advance in implementation, were directed to abstract ideas. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017); *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326–27 (Fed. Cir. 2017); *EasyWeb Innovations, LLC v. Twitter, Inc.*, 689 F. App'x 969, 970 (Fed. Cir. 2017) (holding ineligible claims to "a message publishing system that accepts messages in multiple ways, such as by fax, telephone, or email, verifies the message was sent by an authorized sender, and converts and publishes the message on the Internet," requiring format change); *see also Voit Techns., LLC v. Del-Ton, Inc.*, 757 F. App'x 1000, 1003–04 (Fed. Cir. 2019) (holding ineligible claims

generally invoking use of compression techniques).   We conclude that the claims here are likewise directed to an abstract idea.

B

The claims also flunk the second step of the *Alice* inquiry: They do not incorporate anything more that would suffice to transform their subject matter into an eligible application of the abstract idea.  Claims 39, 40, and 42 recite only generic computer hardware, such as a "processor" and a "broadcasting server" with an "image retrieval portion," "a data structure," and a "transcoding module," '305 patent, col. 27, lines 10–24, as performing the claimed functions, which the '305 patent's specification states were conventional, *id.*, col. 10, lines 4–22 (describing elements of diagrams, including compression components, and stating: "Each of these blocks carry out functionality common[ly] known in the art as well as described above and throughout the present specification.").  "Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016).  In particular, there is no identification in the claims or written description of specific, unconventional encoding, decoding, compression, or broadcasting techniques.[1]

Adaptive suggests that the Patent and Trademark Office's novelty and non-obviousness determinations, rendered in issuing the patent, undermine our conclusion. Adaptive's Op. Br. 53–55.  They do not.  We have explained that satisfying the requirements of novelty and non-

---

[1]    Adaptive made no separate argument in the district court about the application of *Alice*'s second step to dependent claims 40 and 42.

obviousness does not imply eligibility under § 101, including under the second step of the *Alice* inquiry, because what may be novel and non-obvious may still be abstract. *See Chamberlain Group, Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348–49 (Fed. Cir. 2019).

## C

In its reply brief in this court, Adaptive makes two arguments that it did not raise and develop as challenges in the argument section of its opening brief in this court, merely mentioning each point in passing in the statement-of-the-case portion of the opening brief.  One argument is that the district court erred by not construing certain claim terms before deciding the § 101 issue.  Adaptive's Reply Br. 28.  The other is that industry recognition and commercial success establish that the claims are to patent-eligible subject matter.  *Id.* at 24–25.  Because neither argument was developed in the argument section of Adaptive's opening brief, Adaptive has forfeited both arguments.  *See, e.g., SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319–20 (Fed. Cir. 2006) (argument not developed in opening brief's argument section is forfeited); *Martinez-Serrano v. I.N.S.*, 94 F.3d 1256, 1259 (9th Cir. 1996) (same).

## III

For those reasons, we affirm the district court's judgment.

Each party shall bear its own costs.

## AFFIRMED