NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**SENSORMATIC ELECTRONICS, LLC,**
*Plaintiff-Appellant*

**v.**

**WYZE LABS, INC.,**
*Defendant-Appellee*

_____

2020-2320

_____

Appeal from the United States District Court for the District of Delaware in No. 1:19-cv-01543-CFC-SRF, Judge Colm F. Connolly.

_____

Decided: July 14, 2021

_____

DAVID M. KRINSKY, Williams & Connolly LLP, Washington, DC, argued for plaintiff-appellant. Also represented by ARTHUR JOHN ARGALL, III, SARAH M. HARRIS, CHARLES MCCLOUD.

REUBEN HO-YEN CHEN, Cooley LLP, Palo Alto, CA, argued for defendant-appellee. Also represented by DEEPA KANNAPPAN, LAUREN KRICKL, LAM K. NGUYEN; ERIK BENTON MILCH, Reston, VA.

_____

Before NEWMAN, LOURIE, and DYK, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Sensormatic Electronics, LLC ("Sensormatic") appeals from a decision of the United States District Court for the District of Delaware holding that the claims of U.S. Patents 7,730,534 ("'534 patent"); 7,936,370 ("'370 patent"); 7,954,129 ("'129 patent"); 8,208,019 ("'019 patent"); and 8,610,772 ("'772 patent") are ineligible for patent under 35 U.S.C. § 101. *See Sensormatic Elecs., LLC v. Wyze Labs, Inc.*, 484 F. Supp. 3d 161 (D. Del. 2020) ("*Decision*"). Because we agree that the patents claim patent-ineligible subject matter, we *affirm*.

## BACKGROUND

Sensormatic owns the '534, '370, '129, '019, and '772 patents (collectively, the "asserted patents"), which generally describe a wireless surveillance system and methods of operation. Claim 14 of the '129 patent is representative of the claims before us.

14. A surveillance system for wireless communication between components comprising:

a base system including at least two wireless input capture devices (ICDs), the ICDs having at least one sensor and at least one input component for detecting and recording inputs, a processor, a memory, a transmitter/receiver, all constructed and configured in electronic connection;

wherein the ICDs are operable for direct wireless cross-communication with each other without requiring interaction with a remote server computer for operation; and

wherein the ICDs are operable for direct wireless communication with a remote viewing device operable by an authorized user.

'129 patent col. 17 ll. 16–28.

Sensormatic asserted the '534, '370, '129, '019, and '772 patents against Wyze Labs, Inc. ("Wyze") in the United States District Court for the District of Delaware. Sensormatic later reduced the number of asserted claims to 25, asserting: '534 claims 1, 2, 3, and 4; '370 claims 1–7; '129 claims 6–8, 10, and 11; '019 claims 2–4, 7, 8, and 10; and '772 claims 1, 12, and 13. *See* Joint Claim Construction Chart, *Sensormatic Elecs., LLC v. Wyze Labs, Inc.*, No. 1:19-cv-01543-CFC-SRF (D. Del. May 21, 2020), ECF No. 67. Wyze then moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that claim 14 of the '129 patent is representative and that the patents claim ineligible subject matter. Sensormatic responded, arguing that no claim is representative and that the claims are all eligible.

The district court analyzed the claims under the Supreme Court's two-step *Alice* framework for determining patent eligibility. At step one, the court concluded that the claims are directed to the abstract ideas of "wireless communication and remote surveillance," and determined that "none of the claim limitations take the claims beyond those abstract ideas." *Decision* at 165–67. At step two, the court determined that the claims do not recite an inventive concept sufficient to transform them into patent-eligible subject matter because they merely describe implementing abstract ideas "using well-known, generic computer components and functionalities." *Id.* at 168–70. Having concluded that the asserted claims are ineligible for patent under § 101, the court granted Wyze's motion for judgment on the pleadings. *Id.* at 170.

Sensormatic appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review the grant of a motion for judgment on the pleadings under Rule 12(c) by following the procedural law of the regional circuit. *See Allergan, Inc. v. Athena Cosmetics, Inc.*, 640 F.3d 1377, 1380 (Fed. Cir. 2011). Under Third Circuit law, we have "plenary review" of the district court's order granting Wyze's Motion for Judgment on the Pleadings for Lack of Patentable Subject Matter. *Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 214, 220 (3d Cir. 2001). "We must 'view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the . . . non-moving party.'" *Id.* (quoting *Inst. for Sci. Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1004 (3d Cir. 1991)). We will affirm the judgment at that stage only if the plaintiff would not be entitled to relief under any set of facts that could be proved. *Id.* (citing *Consolidated Rail Corp. v. Portlight, Inc.*, 188 F.3d 93, 95–96 (3d Cir. 1999)).

Patent eligibility under § 101 is an issue of law that may contain underlying issues of fact. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). We review the district court's ultimate conclusion on patent eligibility de novo. *Id.* To determine whether a patent claims eligible subject matter, we follow the Supreme Court's two-step framework. *See Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70–73 (2012). First, we determine whether the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 573 U.S. at 217 (citing *Mayo*, 566 U.S. at 77). If not, the claims are patent-eligible. If so, we proceed to the second step and determine whether the claims include an "inventive concept" sufficient to "'transform the nature of the claim' into a patent-eligible application." *Id.* at 217–18 (quoting *Mayo*, 566 U.S. at 72, 78). To recite an inventive concept, a patent must do more than recite an abstract idea "while adding the words 'apply it.'" *Alice*, 573 U.S. at 221 (quoting *Mayo*, 566 U.S.

at 72). "[S]imply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 566 U.S. at 82. Likewise, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223.

As patent eligibility case law has developed, the Supreme Court has had opportunities to declare that claims to a machine are de facto eligible. In fact, the statute provides that "[w]hoever invents or discovered any new and useful . . . ***machine*** . . . may obtain a patent therefore," subject to other patentability requirements set forth in Title 35 of the United States Code. 35 U.S.C. § 101 (emphasis added). But the law has not developed that way. Instead, the Court has noted that the machine-or-transformation test is a "useful and important clue" for determining patent eligibility, *Bilski v. Kappos*, 561 U.S. 593, 603 (2010), but that not all claims drafted as machine or system claims are patent-eligible. In *Alice*, the Court confirmed that recitation of a tangible system, "(in § 101 terms, a 'machine')," does not end the eligibility inquiry. *Alice*, 573 U.S. at 224. What matters, according to the Court, is the reality behind the machine or system language, whether or not it simply clothes abstract concepts. The district court correctly followed that precedent in determining that the patents asserted here claim ineligible subject matter.

At *Alice* step one, Sensormatic argues that the claims are directed to three nonabstract improvements in surveillance technology: (1) "a configuration of ICDs (surveillance sensors) that communicate with each other, which improves wireless range and removes the need for a central server"; (2) "dual encoding of input data, which improves use of bandwidth and device compatibility"; and (3) "prioritiz[ation of] ICD input data through distributed detection of trigger events, which improves storage and retention of significant input data." Appellant's Br. 22–23. Wyze

responds that "the claims focus on the abstract ideas of wireless communication and remote surveillance" and carry out those concepts using "routine and conventional computer technology." Appellee's Br. 11. Wyze counters that dual encoding and trigger events are not at the core of any of the claims, but regardless, are also themselves abstract ideas. *Id.* at 26–27.

As the district court held, "the asserted patents are directed to the abstract ideas of wireless communication and remote surveillance and none of the claim limitations take the claims beyond those abstract ideas." *Decision* at 165–67. All of the claims at issue describe wireless surveillance systems. "[T]he broad concept of communicating information wirelessly, without more, is an abstract idea." *Chamberlain Grp. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1347 (Fed. Cir. 2019).

Sensormatic's argument that the claims are instead directed to three improvements is not persuasive. First, although Sensormatic argues that its claims are directed to a specific configuration of ICDs, Sensormatic fails to identify any particular nonabstract configuration. Second, dual encoding is itself abstract. The concept of encoding or decoding image data is abstract, even if for the purpose of transmitting files to devices with less memory or bandwidth or by transcoding data into multiple formats. Third, prioritization of ICD input data through detection of trigger events is an aspect of the abstract idea of remote surveillance as well as drawn to the abstract idea of classifying and organizing images. Accordingly, we conclude that the claims are directed to an abstract idea at *Alice* step one.

We next consider whether the claims describe an inventive concept at step two. Sensormatic argues that "[t]he claims apply an ordered configuration of ICDs that was unconventional and improved surveillance technology." Appellant's Br. 23. Sensormatic asserts that its systems distribute functions previously carried out at a server

computer to a cluster of interconnected ICDs, thereby eliminating the need for software and extending the system's range. *See id.* at 51–52. Wyze responds that the district court correctly determined that the claims lack an inventive concept. Wyze argues that the claims consist of abstract ideas, conventional computer parts, and generic technologies. Appellee's Br. 52–53.

Although Sensormatic faults the district court for failing to assess claimed elements as an ordered combination, Sensormatic fails to explain how any combination of elements provides an inventive concept. Sensormatic asserts that a specific, beneficial configuration of ICDs is claimed and provides an inventive concept. But it is not clear what that "specific configuration" is, and Sensormatic's briefs do not offer a clear explanation. At oral argument, Sensormatic's counsel did not identify a nonabstract "configuration." *See, e.g.*, Oral Argument at 9:55–12:35, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-2320_06082021.mp3. Sensormatic's counsel stated that the ICDs "are physically configured to be novel." *Id.* at 10:08–10:22. The claims, however, fail to set forth any particular physical configuration. Furthermore, Sensormatic's counsel asserted that "there is no need to parse the details of how these things are configured in the specification." *Id.* at 9:37–9:46. Counsel appeared to identify the configuration as "ICDs that are operable to directly communicate with one another and with the DIR." *Id.* at 11:24–11:43. Providing generic devices that communicate with each other, however, is a conventional application of an abstract idea. *See Decision* at 168–69 (determining that a digital input recorder ("DIR") is a "pre-existing computer component" and an ICD is a "combination of . . . generic components"). Accordingly, we conclude that the claims do not recite an inventive concept sufficient to transform the claims into patent-eligible subject matter.

Finally, the district court did not err in its determination that claim 14 of the '129 patent is representative of all

claims at issue. "Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer*, 881 F.3d at 1365. Although the court treated claim 14 as representative, the court also specifically considered limitations from other claims, per Sensormatic's request. *See, e.g.*, *Decision* at 167 (discussing the "dual encoding" and "trigger event" limitations as part of the court's *Alice* step one analysis); *id.* at 169–70 (discussing the "dual encoding" and "trigger event" limitations as part of the court's *Alice* step two analysis). Sensormatic fails to identify any relevant claim limitations, alone or in combination, that the court failed to consider. We therefore find no fault with the court's representative claim determination.

## CONCLUSION

We have considered Sensormatic's remaining arguments but find them unpersuasive. For the foregoing reasons, we *affirm* the judgment of the district court.

## **AFFIRMED**